## WILLIAM G. WHITE v. JAMES BYRD HEWITT and Others.[1]

November 15, 1912.

Nos. 17,682—(31).

**Res judicata — estoppel of plaintiff's grantor.**

In this action of partition, the issue was as to whether or not plaintiff had any title to an undivided one-third interest in the land. It is *held:*

1. That a judgment in a former action between plaintiff's grantor and others, as plaintiffs, and certain of the defendants in this case as defendants, estopped plaintiff's grantor and those in privity with him from asserting title to the interest claimed by plaintiff in the case at bar.

2. An unrecorded quitclaim deed from plaintiff's grantor to plaintiff, construed together with a contract entered into between them at the same time, constituted plaintiff the agent or attorney of the grantor to conduct litigation, sell the property described in the deed, and divide the proceeds, and did not make plaintiff a bona fide purchaser or give him a title that can prevail as against the subsequent estoppel of his grantor by the judgment and decision in the former suit.

Action in the district court for Ramsey county to determine adverse claims to certain real estate. The answers of James Byrd

1 Reported in 138 N. W. 421.

Hewitt and Walter Hewitt alleged that they were the owners in fee simple of an undivided two-thirds of the property. The answers of defendants R. C. Jefferson, Wright, Barrett & Stilwell Company, and the Minnesota Transfer Railway Company, alleged that plaintiff's claim of interest was derived from A. K. Barnum, that he held all such claim of interest merely as the agent of Barnum; and that the answering defendants respectively purchased portions of the premises described from defendant Jefferson, without notice or knowledge of any title or interest in plaintiff or in either of the defendants Hewitt. It further alleged that plaintiff and defendants Hewitt, by the decision in the case of Barnum v. Jefferson and others,[1] were barred from maintaining this action, or asserting any right or interest in the premises described.

The case was tried before Brill, J., who found that neither plaintiff nor defendants Hewitt nor Wright, Barrett & Stilwell Company had any interest in the property, and that defendant Jefferson was the owner in fee of the property, subject to certain rights in a portion thereof in defendant Minnesota Transfer Railway Company, under a certain contract of sale to it by said Jefferson. From an order denying his motion to set aside the decision and for a new trial, plaintiff appealed. Affirmed.

*William G. White,* pro se.

*John E. Stryker,* for respondents.

BUNN, J.

This action is for the partition of certain land which formerly was a part of Bernheimer avenue in St. Paul. Plaintiff claimed to own an undivided one-third interest in the land, and each of defendants Hewitt an undivided third. The trial court decided that neither plaintiff nor the Hewitts had any interest in the land, but that the same was owned by defendant Jefferson, subject to a contract with the defendant railway company. Plaintiff moved for a new trial, and appealed from the order denying such motion. The ultimate question here is whether plaintiff had any interest in the land. His claim of title vests upon the following facts:

In 1889, a portion of Bernheimer avenue, one of the public streets

1 [See 109 Minn. 1, 122 N. W. 453.]

of St. Paul, was vacated. At that time Allie Hewitt, James Byrd Hewitt and Walter Hewitt owned as tenants in common lot 60 of Hewitt's outlots, first division, which adjoined the vacated street. Through conveyances and a mortgage foreclosure, all after the vacation of the street, defendant Jefferson became the owner of lot 60. Allie Hewitt died in 1898. By her will she devised to her son, Augustus Kirby Barnum, among other property, all her interest in Hewitt's outlots.

"All in trust, however, to receive, rent, have, hold, mortgage, sell and convey and otherwise dispose of the same or any portion thereof, when and on whatever terms he shall see fit, as fully as though he were seized in fee simple thereof in his own right, and the proceeds thereof to invest and reinvest when and where he shall see fit, and out of the net income thereof and of the investments arising therefrom to use for the support of himself and his children whatever he shall deem necessary.

"And should it be necessary in any case for his comfort to use more than the interest or income, I wish him to do so without restraint or control from any one else, but having in mind, however, my preference that he should keep the principal intact if he well can.

"And all of the said property and the investments and reinvestments of the proceeds thereof remaining at the death of my said son shall be disposed of as he, my said son, shall provide in his will. But should my said son die intestate, then that portion of the said property remaining at his death shall, one-half thereof, pass to and become the property of then living children of my said son and the issue of any deceased child in equal shares, so that each living child shall receive like portion and that all the issue, if any, of each deceased child shall altogether receive the same portion as a living child, and the other one-half of such remaining property shall become the property of and pass to my sister, Rebecca E. Miller, if she shall be then living, but if she be dead, then to whomsoever she shall have designated in her will to receive the same."

December 15, 1906, Augustus Kirby Barnum executed and delivered to plaintiff a deed, by which "in his capacity as trustee under the last will and testament of Allie Hewitt, deceased," he conveyed to plaintiff all those portions of Bernheimer avenue and other named streets embraced within the limits of Hewitt's outlots. The deed recited the trusts in the will, and the power of sale therein given Barnum, and purported to be executed by virtue of the power given Barnum in the will. At the same time, and as a part of the same transaction, plaintiff, Barnum and one Soucheray entered into a contract reciting the conveyance by Barnum to plaintiff, and providing that plaintiff and Soucheray should convert into cash the real estate so conveyed by Barnum, and to that end institute and carry forward all necessary suits, pay all costs and expenses thereof, and divide the proceeds of the property when sold, one-half to Barnum, and one-half to plaintiff and Soucheray.

In March, 1910, Barnum "in his individual capacity and also in his capacity as trustee" gave another deed of the same property to plaintiff. Neither of these deeds was ever recorded, nor was the contract.

Under the doctrine of White v. Jefferson, 110 Minn. 276, 124 N. W. 373, 641, 125 N. W. 262, Allie Hewitt, at the time of her death, owned a one-third interest in the land in question. The writer is firmly convinced that the doctrine of that case is unsound, but it must be adhered to in the present case between the same parties. If therefore plaintiff now has Allie Hewitt's interest, through her will and the deeds from Barnum, he is the owner of a one-third interest in the property involved, each of the Hewitts the owner of one-third, and defendant Jefferson has no title.

The claim of defendant Jefferson is that Barnum was estopped to claim title to the land in question by virtue of the decision and judgment in an action brought by Barnum and the Hewitts against Jefferson and others, and that plaintiff took no title from Barnum under either deed.

We find little difficulty in agreeing with the conclusions of the trial court that the judgment in the Barnum case constituted an estoppel. In the complaint in that case plaintiffs alleged that the legal

title to the tract in question, and other property, was in defendants Jefferson and Hoard, but that plaintiffs were the owners of the equitable title. The answer admitted that defendants had the legal title, and denied that plaintiffs had any right, title or interest. The complaint referred to an exhibit for the description of the real estate involved in the action, and in this exhibit the part of Bernheimer avenue claimed in the case at bar was explicitly described. After a trial, the court rendered a decision in favor of defendants, finding that the title was in Jefferson and Hoard, and that plaintiffs had no right, title or interest to or in the premises. Pursuant to this decision, judgment was entered in the district court, by the terms of which it was adjudged "that the plaintiffs herein take nothing by this action, and that the defendants herein have and recover" costs. This judgment was affirmed by this court. Barnum v. Jefferson, 109 Minn. 1, 122 N. W. 453.

It is true that the question of Barnum and the Hewitts' title to the strip of vacated street, as distinct from their claimed ownership of the property of which Jefferson and Hoard had the legal title, was, not litigated. Indeed, the case hinged upon the existence of the agreement claimed by plaintiff to have been made. But this is in no way controlling. The issue involved in the case at bar, the title to the vacated street, was presented by the pleadings in the former case, and might have been litigated. As said by Chief Justice Start in Veline v. Dahlquist, 64 Minn. 119, 66 N. W. 141, "a judgment on the merits constitutes an absolute bar to a second suit for the same cause of action, and is conclusive between parties and privies, not only as to every matter which was actually litigated, but also as to every matter which might have been litigated therein." In Prendergast v. Searle, 81 Minn. 291, 84 N. W. 107, Mr. Justice Brown said: "It is elementary that a judgment in an action is final and conclusive between the same parties as to all questions or issues presented by the pleadings."

The rule is a familiar one and we apply it here. We do not consider that the cases of Dixon v. Merritt, 21 Minn. 196; McClung v. Condit, 27 Minn. 45, 6 N. W. 399, or Augir v. Ryan, 63 Minn. 373, 65 N. W. 640, announce any different rule that is applicable:

to the facts in this case. The distinction between estoppel by judgment and estoppel by verdict is not important in this case. The issue as to the ownership of this vacated street was expressly made by the pleadings in the former suit; that it was not actually litigated may have been because the legal title was admitted. In any event it is not a case that calls for a decision that, because there is no finding or no evidence that the point was actually litigated and determined in the former suit, there can be no estoppel. The fact of ownership, the vital fact in the case, was litigated and determined. The most that can be said is that the legal point upon which plaintiff now claims title was not presented in the former case, and not decided. This is no reason why the former adjudication is not a bar.

It is urged that because the judgment itself did not adjudge title in defendants, there could be no estoppel. But we look to the findings to see what was decided, to interpret the judgment. It there appears clearly that it was determined that plaintiffs had no title, and that defendants were the owners. Plaintiff contends that the judgment did not give title to defendants, was not a link in their chain of title, under the rule in Minnesota Debenture Co. v. Johnson, 94 Minn. 150, 102 N. W. 381. This may be conceded, but it does not help plaintiff. Though the judgment was not a link in defendant's title; though it did not operate to transfer the Barnum and Hewitt title to Jefferson as against all the world, it does not follow that it might not operate as an estoppel by verdict to prevent the assertion of title by Barnum and the Hewitts, or their privies. Plaintiff must show that he has an interest in the land that he seeks to have partitioned in this action. He can prevail only if he shows a title in himself, not merely by showing that another has no title. We think it clear that there was an estoppel as against Barnum and the Hewitts.

It remains to be considered whether plaintiff took any title from Barnum that gives him an interest in the land that is not cut out by the estoppel of his grantor.

The trial court decided that the first deed from Barnum "in his capacity as trustee" under the will of Allie Hewitt, conveyed no title because the trust was an invalid one, and the question of the validity

of this trust was argued in this court. But, conceding its invalidity, we are not prepared to hold that, were it not for the contract entered into as a part of the transaction, plaintiff did not acquire thereby all the interest which Barnum had, either as trustee or as the owner of the legal title. We must however consider the transaction as a whole, and look to the terms of the contract to determine whether plaintiff should be considered a bona fide purchaser of Barnum's interest, or merely his agent and attorney to conduct necessary litigation, sell the property and turn over the proceeds to Barnum, less compensation for his services and those of Soucheray. The contract seems to leave no reasonable doubt on this point. It was certainly not intended that plaintiff should become the owner of Barnum's interest. He was obligated to conduct litigation, if necessary, as it undoubtedly would be and was, to establish Barnum's title to a one-third interest in the vacated street. And he was bound to account to Barnum for the proceeds of such litigation and the sale. His interest was really in the fruit of the litigation, not in the real estate itself. His position was not far different from that of any lawyer who takes a case on a contract for a contingent fee. Looking broadly at the entire situation as disclosed by the deed, contract, and evidence, we must hold that plaintiff was only the attorney, agent, or trustee of Barnum, and that he cannot be considered an innocent purchaser, or even a purchaser, of Barnum's interest in the land.

All that is said above applies to the second deed from Barnum to plaintiff, and in addition, there is the fact that this deed was given after Barnum had become estopped by the judgment or decision in the case of Barnum against Jefferson. As we have said, neither of the deeds to plaintiff was ever recorded. It is impossible to hold that he has any title that can prevail in this action of partition.

We have carefully considered the other points presented by plaintiff and reach the conclusion that there was no error in the findings or in the omission to make certain findings, and that the decision of the trial court that plaintiff had no interest in the land sought to be partitioned was correct.

Order affirmed.