**GOLDMAN v. GENERAL MILLS, Inc.**

Civ. No. 3710.

United States District Court
D. Minnesota, Fourth Division.

June 21, 1952.

D. E. Balch and A. Lyman Beardsley, of Minneapolis, Minn. (Morley, Cant, Taylor, Haverstock & Beardsley, of Minneapolis, Minn., of counsel), for defendant in support of said motion.

Josiah E. Brill, of Minneapolis, Minn., for plaintiff in opposition thereto.

NORDBYE, Chief Judge.

This cause came before the Court on defendant's motion for a summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

On or about November 1, 1946, defendant leased a building located at 3127 Hiawatha Avenue, Minneapolis, Minnesota, for ten years from the Char-Gale Manufacturing Company, possession to commence January 1, 1947. Plaintiff and certain other persons who since have assigned their rights to plaintiff purchased the building and succeeded to the lessor's rights and obligations under this lease on or about February 1, 1947. Defendant conducted a manufacturing business in the building until about January 15, 1948, when the building was destroyed by fire to such an extent that municipal authorities required the remainder of the building to be wrecked and removed from the premises. Defendant notified plaintiff that it no longer considered the lease in effect following the fire.

Plaintiff contended that the fire resulted from the negligence of defendant and its employees and sued defendant for negligently causing the fire which destroyed the building. Plaintiff sought to recover the value of the building and the present value of the rents which would have accrued under the lease if the building had not been destroyed by fire. The action was based in tort, not contract. The jury returned a verdict and answers to special interrogatories in which they found that defendant's negligence had caused the loss of the building, and the jury awarded plaintiff substantial damages for the destruction of the building and the loss of rents under the lease. Defendant moved for judgment notwithstanding the verdict or for a new trial, and this Court granted a new trial upon the issue of damages because the measure of damages and the award thereunder gave plaintiff more than a single recovery for damages suffered. The Court rejected defendant's contention, however, that the lease relieved defendant of all liability for its negligence and therefore denied the motion for a judgment notwithstanding the verdict. The Court held, despite plaintiff's argument to the contrary, that the proper measure of damages in tort was the value of the building blessed or burdened with the lease on the date of the fire. Subsequently, the Court denied plaintiff's motion to amend its complaint to include future rental losses.

After the Court granted a new trial on the issue of damages, plaintiff and defendant stipulated that the building's value under the new theory of damages was $142,500, and, preserving all rights of appeal on all issues, they stipulated for entry of judgment in favor of plaintiff for $142,500. Defendant appealed from that judgment to the Court of Appeals for the Eighth Circuit, 184 F.2d 359. Plaintiff did not appeal. That court reversed the trial court's decision. That court held, one judge dissenting, that the lease relieved defendant from liability for fire damage caused by defendant's negligence. It held that the parties to the lease intended the risk of loss through fire to be covered by insurance for which the premiums were to be paid from rent paid to plaintiff by defendant, and that the intent was that the insurance company, not the defendant, should bear the risk of loss through fire. Judgment was entered in favor of defendant upon the mandate of the Appellate Court.

Plaintiff now brings the instant action to recover the amount of rent and real estate taxes which plaintiff alleges are due and unpaid under the lease since the fire. The premises have not been restored since the fire. This action lies strictly in contract, not tort. Defendant has moved for a summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant contends that the lease has terminated by its terms and also by a surrender and acceptance of the property, or by commencement of the prior action and its prosecution to final judgment by plaintiff. Defendant also contends that the judgments

in the prior action are res adjudicata of the instant action, that the parties intended that the insurance company, not defendant, should bear the risk of loss through fire, and that plaintiff will receive a double recovery if he is permitted to recover the rents without restoring the building.

Although the entire record must be considered, the soundness of defendant's motion here appears to turn principally upon the lease, this Court's decision in the previous action, and the Appellate Court's decision ordering judgment for the defendant in the prior action. That part of the lease captioned "Destruction by Fire" and "Repair of Premises after Fire" provides,

"It is further agreed between the Lessor and Tenant that if during the term of this lease the demised premises or the improvements thereon shall be injured or destroyed by fire or the elements, or through any other cause, so as to render the demised premises unfit for occupancy, or makes it impossible to conduct the business of the tenant thereon, or to such an extent that they cannot be repaired with reasonable diligence within thirty (30) days from the happening of such injury, then the Lessor may terminate this lease and the term herein demised from the date of such damage or destruction, and the Tenant shall immediately surrender the demised premises and all interest therein to the Lessor, and the Tenant shall pay rent only to the time of such surrender; and in case of any such destruction or injury the Lessor may re-enter and repossess the demised premises discharged of this lease, and may dispossess all parties then in possession thereof. But if the demised premises can be restored within sixty (60) days from the happening of the injury thereto, and the Lessor within fifteen (15) days from the occurrence of such injury elects in writing to so repair or restore said premises within sixty (60) days fom the happening of the injury thereto, then this lease shall not end or terminate on account of such injury by fire or otherwise, but the rent shall not run or accrue after the injury and during the process of repairs, and up to the time when the repairs shall be completed, except only that the Tenant shall during such time pay a pro rata portion of such rent apportioned to the portion of the demised premises which are in condition for occupancy or which may be actually occupied during such repairing period. If, however, the demised premises shall be so slightly injured by any cause aforesaid, as not to be rendered unfit for occupancy, then the Lessor shall repair the same with reasonable promptness, and in that case the rent shall not cease or be abated during such repairing period. All improvements or betterments placed by the tenant on the demised premises shall, however, in any event be repaired and replaced by the tenant at his own expense and not at the expense of the Lessor."

Defendant points to this provision in support of its defense in this action that the lease terminated as of the date of the fire, regardless of negligence, because plaintiff failed to rebuild within sixty days. Another part of the lease is captioned "Tenant to Maintain Surrender Premises in Good Order", and it provides in part,

"* * * and the Tenant agrees to return said premises peaceably and promptly to the Lessor *at the end of the term of this lease, or at any previous termination thereof,* in as good condition as the same are now in or may hereafter be put in, loss by fire and ordinary wear excepted." (Italics supplied.)

One of the questions on this motion appears to be whether defendant is relieved of liability for the rents even if its negligence caused the destruction of the building. Nothing in the lease holds the tenant liable for rents if the building was destroyed without the fault of the tenant. On the contrary, analysis of the so-called "Destruction by Fire" and "Repair of Premises after Fire" provision requires the conclusion that if the tenant was not negligent, it was relieved of liability for rents if the landlord was unable to repair the destroyed building within sixty days after

the fire and failed to give the required notice that the building would be repaired. That is, the lease terminated (at least in the absence of negligence by the defendant) if the building was not repaired within sixty days. Concededly, the provision is phrased in terms of what the *landlord* may do in case of fire. But in substance the provision states the conditions and hypothesis upon which the lease may continue to operate after fire damages the building. The difficulty in this action, like in the tort action previously before this Court and the Appellate Court, is that the provisions of the lease do not expressly state whether the tenant is relieved of liability regardless of its negligence. In resolving this difficulty, this Court must, of course, recognize the views which the Appellate Court expressed in the tort action whether that recognition be based upon the principle of res adjudicata or upon the rule of stare decisis, or merely upon the fact that the Appellate Court has expressed views which clearly bear upon the particular question.

In the tort action this Court held that, because of the public policy, the lease's silence on the question, and various other factors, the parties intended that the tenant should not be relieved of liability for its negligence. But, construing the lease as a whole, the Appellate Court found that extrinsic aids of interpretation were not needed in determining the defendant's liability under this lease for the negligent destruction of the building, because the intent of the parties was clear from the lease itself. And, construing the lease as a whole, the Appellate Court found that the parties intended to relieve the tenant from liability in the event the building was destroyed by fire as a result of the defendant's negligence. In this connection, the court stated, 8 Cir., 184 F.2d 359, 365,

"The lease also provides under the caption 'Destruction by Fire' that in case of a fire totally destroying the building the lessor had the option to terminate the lease or to rebuild. * * The reservation on the part of the landlords of the privilege to rebuild at their own expense without requiring contribution from the tenant (whether it had been negligent or not) is further strong indication of the mutual intention that the risk of the loss by fire should be carried as it was carried by a fire insurance company and that the tenant had no obligation in the event of loss by fire."

It seems clear, therefore, that while the Appellate Court was referring to defendant's liability in damages for its negligent destruction of the building by fire, it concluded that regardless of defendant's negligence in causing the fire, the lease terminated if the building was not repaired within sixty days after the fire. If that was the intention of the parties and the Appellate Court so held, it would be wholly inconsistent and entirely irreconcilable with the Appellate Court's decision to hold in this proceeding that any rent liability could arise from the terms of a terminated lease. The construction of the lease by the Appellate Court leaves only two alternatives to the lessor in case of fire. He can rebuild within the time allotted by the lease, or he can terminate the lease. The failure of the lessor, as viewed by the Appellate Court, to use the insurance money to rebuild necessarily resulted in a termination of the lease and relieved the tenant from any obligation to pay rent.

Moreover, the showing herein establishes that plaintiff made an irrevocable election of remedies and terminated the lease by commencing the previous tort action and prosecuting it to a final conclusion without an appeal from the judgment entered therein. The terms of the lease quoted above clearly show that the lessor was entitled to receive the premises only "at the end of the term of the lease or at any previous termination thereof." Under the interpretation of the lease most favorable to plaintiff, he could have enforced the lease after the fire or he could have terminated it. But he could not do both. For the lease obviously could not be both effective and terminated at the same time.

Plaintiff in selecting his option chose to bring the tort action. This action was necessarily inconsistent with the continu-

ance of the lease for plaintiff sought the value of the building. He was only entitled to this as of the date of the fire if the lease terminated at that time. If the lease had not terminated, then plaintiff was entitled only to the rents, not to the value of the building which he sought. Moreover, the very theory of damages which plaintiff adopted in his tort action and which was urged in the Appellate Court is consistent only with the termination of the lease in that it included the value of the lease as an element of damages. That is, the value of a terminated lease was considered in determining the property's remaining value after the fire. Plaintiff could not recover both the value which the rents gave to the building on the date of the fire and the rents themselves as they later became due. That would award multiple damages, which the Court denied when it granted a new trial on the issue of damages. And when the Court, after granting a new trial, denied plaintiff the right to amend his complaint wherein he sought to recover rental losses, plaintiff was informed at that time that "He cannot in addition recover rental losses as such, either current or on the theory of anticipatory breach, whether he classifies such losses as resulting from breach of contract or from tort. Those losses under the Court's order granting a new trial are an element going to the value of the building. They are not separate damages." The new trial, therefore, proceeded upon the theory that plaintiff's damages were limited to the value of the building blessed or burdened with the lease. A final judgment was entered, from which no appeal was taken by the plaintiff, and obviously that action proceeded upon the assumption that plaintiff having failed to rebuild within the sixty day period, the lease was terminated. As heretofore stated, that was the view of the Court of Appeals when it observed that "in case of a fire totally destroying the building the lessor had the option to terminate the lease or to rebuild."

In re Estate of Le Borius, 222 Minn. 31, at page 33, 23 N.W.2d 1, at page 2, 166 A.L.R. 313, the Minnesota Supreme Court held:

"The doctrine of election of remedies * * * rests upon the principle that one may not take contrary positions, and that where he has a right to choose between two inconsistent rights or claims the assertion of one involves a repudiation or negation of the other, and the choice of one will preclude going back and making another election."

This rule seems applicable here. Plaintiff elected to pursue his tort claim which is inconsistent with, and necessarily repudiated, the existence of the lease after the date of the fire. His choice of the tort action precludes him from now claiming the contract rights, which he at least by acquiescence previously repudiated. Because plaintiff pursued his tort action to a determinative conclusion, with full knowledge of his rights under the lease, his election is an irrevocable one under the Minnesota law. First National Bank v. Flynn, 190 Minn. 102, 250 N.W. 806, 92 A.L.R. 1272. Plaintiff does not present a case in which merely a mistaken remedy was sought. The choice of theory and remedy, together with the prosecution to final conclusion, precluded the existence of another act or remedy thereafter under the lease. Obviously, a contract cannot be both terminated and enforced.

That the commencement of an action and prosecution to final judgment can constitute a termination is recognized by the Minnesota Supreme Court in Donaldson v. Mona Motor Oil Co., 190 Minn. 231, 251 N.W. 272. In that case defendant leased some property from plaintiff. The lease required defendant to deliver the property to plaintiff at the termination of the lease in as good condition as it was received, reasonable wear and tear or injury not occasioned by defendant's negligence excepted. After three years of the five-year term had run, plaintiff sued defendant for damages inflicted upon the property, but that action was held in abeyance when plaintiff sued defendant for rent due under the lease. The first issue in the rent case was whether commencement of the first action for property damage terminated the lease so that plaintiff could not thereafter

assert that the lease was in force and recover rent thereunder. The court held that in that case the bringing of the first action had not terminated the lease because plaintiff did not possess the right to terminate the lease prior to the end of the term except for failure to pay rent. Moreover, the action was not prosecuted to final judgment. In the instant case, however, the plaintiff did possess the right to terminate the lease when the property was destroyed by fire, and the action was prosecuted to final judgment. That the Minnesota court recognized the general rule contended for by defendant here is apparent from the fact that the court considered whether that rule applied under the facts of that case. Although the Minnesota court referred to the first action and its relation to the intent of the parties concerning termination, that issue was separate from the question of whether the prosecution of the original action could terminate the lease.

And in Hoofnagle v. Alden, 170 Minn. 414, 213 N.W. 53, 55, the plaintiff leased some property to the defendant under a lease which required the defendant to return the property to the plaintiff at the end of the term in as good condition as received, ordinary wear and tear excepted. The property was destroyed before the end of the lease, and plaintiff sued defendant for damages plaintiff suffered thereby. That action did not succeed, and plaintiff then commenced another action. Defendant pleaded the first action as a bar to the second. Defendant contended that the first action had been in tort and the second in contract. In its opinion, the court said,

"* * * If this be true, and if respondent had a choice between a tort action and one on contract, and if, with * * * knowledge of all the facts, he elected to bring a tort action, it is possible that under the doctrine of election of remedies he is now estopped from suing on the contract. Thomas v. Joslin, 36 Minn. 1, 29 N.W. 344, 1 Am.St.Rep. 624; Eder v. Fink, 147 Minn. 438, 441, 180 N.W. 542. But it is not necessary to consider that question, for it must be held that the complaints in both actions state facts intended to charge the appellant with a failure to exercise due and proper care of the property as required by the covenant in the lease, and with liability for damages which resulted in consequence."

The Court then turned the case on res adjudicata because the first action had been determined in favor of that defendant.

Consider also Blythe v. Kujawa, 177 Minn. 79, 224 N.W. 464; Fire Protection Co. v. Hawkeye Tire & Rubber Co., 8 Cir., 8 F.2d 810, 45 A.L.R. 180.

The mere fact that plaintiff's tort action was unsuccessful does not prevent that action from being an irrevocable election. Eder v. Fink, 147 Minn. 438, 180 N.W. 542. Consequently, the lease terminated by commencement of the prior action and its prosecution to final judgment. And by that action plaintiff made an irrevocable election of remedies which cannot now be avoided.

In view of these premises, therefore, plaintiff possesses no right to recover rents under the lease before this Court, and summary judgment for defendant must be granted. It is so ordered. Let judgment be entered accordingly.

An exception is reserved to plaintiff.